**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| | ) | No. 05 C 6971 |
| v. | ) | |
| | ) | Judge John A. Nordberg |
| JAMES M. BARNES, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Wachovia Securities, LLC ("Wachovia") seeks to vacate a $783,729 arbitration award in favor of a former branch manager in its Gurnee branch office, respondent James M. Barnes, who claimed that he was wrongfully terminated based on what he says was at best a "paperwork" violation of a firm policy. Wachovia recognizes that this Court's review of an arbitration award under the Federal Arbitration Act ("FAA") is very narrow but argues that the arbitrators exceeded their powers by basing the award on a legal claim never raised or addressed in the hearing.

The basic facts are not in dispute. After working many years for Wachovia and its predecessors, Barnes was fired on Friday November 14, 2003. He was fired without notice in a brief meeting at a nearby Holiday Inn. The first written explanation of why he was fired was made several days later when Wachovia submitted to the NASD, as it was required to do, the

Form U-5. On that form, which is a key part of this action, Wachovia explained that it terminated Barnes for "failure to follow firm policy regarding the opening of new accounts."

In September 2004, Barnes initiated the arbitration with the NASD by filing a submission agreement and a Statement of Claim. In his Claim, Barnes described his claims as ones for "wrongful termination" and for "denial of severance benefits." With the exception of one reference to the Illinois Wage Payment and Collection Act, a reference that related to recovery of attorneys' fees, Barnes did not tie his wrongful termination claim to any particular statute or common law doctrine. However, his claim was couched in the language of Title VII in that he argued that Wachovia's official explanation for his firing was pretextual. To Barnes, it made no sense to fire one of its branch managers who had "a spotless compliance record covering twenty-five years of service, a growing revenue base, no customer complaints, no loss [] of customer assets, no substance abuse problems and no allegations of misconduct toward or disrespect for his fellow employees." He theorized that he was fired because Wachovia needed a "fall guy" so that it could look tough to regulators and thereby forestall further investigation into those higher up in the company. Although Barnes never formally conceded that he violated firm policy, his main argument was that any such violation was not serious and that the customary response, both at Wachovia and in the industry at large, was to allow a person in these circumstances to remain at the firm but no longer in a supervisory capacity. Barnes also alleged that particular way he was fired – summarily with no notice – was done so that Wachovia could "poach" his $42 million book of business. Barnes eventually was hired by another company, although by then he had only $14 million in client assets. Barnes alleged that he should have received severance

benefits under a company policy tied to length of service. These benefits were not available, however, if the employee was fired for good cause.

In its Answer, Wachovia's laid out its theory of the case, setting forth numerous facts allegedly showing that Barnes knowingly violated Firm policy on more than one occasion and that he also tried to "keep his actions secret" from the Firm's Compliance Department.[1] Barnes allegedly had been warned about this Firm policy and was aware that Wachovia had began during this time taking a stricter approach regarding regulatory compliance due to the then recent passage of the Patriot Act. Barnes (according to Wachovia) ignored these warnings and in fact took extra steps to hide his activities. Wachovia therefore concluded that his failures to follow firm policy were serious. To Wachovia, Barnes' experience and supervisory position cut against him, suggesting that instead of leniency he should have been held to a higher standard.[2]

The arbitration hearing began on November 2, 2005 in Chicago before a panel of three arbitrators. The hearing lasted two and a half days with opening and closing arguments and testimony from witnesses. The transcript of the hearing is 548 pages. Based on both the opening and closing statements, which we have read, and based on the parties' description of the testimony during the hearing, the parties stuck to the same themes and arguments contained in the Statement of Claim and Answer. Barnes continued to argue that the termination was

---

[1] The firm policies at issue related to the opening of new accounts by LLC entities seeking to do market timing trades through sub-annuity accounts.

[2] Although Barnes never indicated in his Statement of Claim that he was bringing a claim under any of the federal discrimination statutes, Wachovia in its Answer noted that Barnes in his Claim had referred to the fact that he was 56 years old and was suffering from hemochromatosis, which is a blood disease. Based on these two references, Wachovia argued that Barnes could not make out either a disability or age discrimination claim.

pretextual because the violation was at best technical, and Wachovia maintained its position that the firing was not pretextual because of the serious nature of the violation.

The hearing ended on Friday, November 4th. That same day, the arbitrators signed a 4-page unanimous award, which is in what appears to be a standard format. There is a brief case summary describing the parties' positions set forth in the Statement of Claim and Answer. The substantive explanation of the ruling consists of the following two sentences. The second one is the central focus of this opinion:

> Wachovia Securities LLC is liable for and will pay to James M. Barnes the sum of $783,729.00 []. In making this determination, the Arbitration Panel finds that the reason identified on Mr. Barnes' Form U-5 is inappropriate and does not correctly reflect the actual reason for termination.

(Award at 2.)

Upon first glance, especially after reading the first sentence, one would think that this was a straightforward and clear-cut victory for Barnes. He was awarded over $700,000, an amount in the range of damages he requested in his closing argument.[3] The finding set forth in the second sentence seemingly indicates that the arbitrators believed Barnes' wrongful termination argument. Not so fast, says Wachovia. It believes, based on this same sentence, that the arbitrators actually made a dramatic U-turn in their reasoning. According to Wachovia, the arbitrators actually *ruled against* Barnes on the only claim he brought (wrongful termination) but then decided to rule for him on a separate and an entirely new claim that was never raised or argued in the hearing. This claim is sometimes referred to as a Form U-5 defamation claim. Wachovia is upset about what it believes was a sudden change in rationale and argues that it had

---

[3]In closing, Barnes summarized various items of damages and stated that they added up to "right around" a million dollars. (Tr. 522.)

a good defense to a defamation claim but did not raise it because it had no idea that the arbitrators were considering such a claim. Wachovia argues that the arbitrators therefore "exceeded their powers," which is one of the four statutory grounds under Section 10 of the FAA for vacating an award. *See* 9 U.S.C. § 10(a)(4).

It seems relatively clear under the case law that, if Wachovia's explanation of what occurred is true, then the arbitrators exceeded their powers. Barnes does not really dispute the legal conclusion, although he does strongly disagree with the factual premise. *See* Resp. at 9 ("One can imagine circumstances where a claimant might attempt to sneak in a new issue during the hearing that had not been included in the Statement of Claim, hoping to capitalize on the element of surprise, but that is not what occurred here [.] In that type of situation, a due process challenge might be appropriate."). So the question here is whether there is any evidence to support Wachovia's interpretation that the arbitrators made this sudden shift in the rationale or basis for their decision.

Before addressing this question, we should provide some context. The explanation for the award in this case was one sentence. By itself, is that unusual or improper? Based on several recent articles on the subject, the answer is no. First, there is apparently no current NASD rule that requires arbitrators to provide *any* explanation for their award, although this issue is the subject of some debate and the NASD is apparently considering a new rule that would require some minimal explanation. *See* Steven C. Bennett, *Explained Awards In Arbitration: The NASD's Proposed Experiment*, 61 APR Disp. Resol. J. 15, *16 (Feb-April 2006) ("The NASD Code of Arbitration Procedure [] does not now require arbitrators to produce 'reasoned' awards or even to briefly explain the basis for the decision."). Second, the great

majority of NASD awards contain *no* explanation for the decision. *See* Jennifer J. Johnson, *Wall Street Meets The Wild West: Bringing Law and Order To Securities Arbitration*, 84 N.C. L. Rev. 123, 144-45 (2005) (in 2003 and 2004, fewer than 5% of the NASD arbitration decisions contained "even a brief explanation of the panel's decision").[4] Viewed in this context, the one-sentence explanation in this case is longer than the typical award. Third, the Seventh Circuit has held that a Court may not vacate an arbitration award under the FAA on the ground that it contained no explanation for the decision. *See Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994) (an arbitrator is "simply not required to state the reasons for his decision" because such a requirement would "serve only to perpetuate the delay and expense which arbitration is meant to combat"). Based on the Seventh Circuit's decision in *Eljer*, the award in this case would have been immune from any challenge if the arbitrators had simply stopped after the first sentence.

But the arbitrators did include the second sentence, opening the door for Wachovia to argue that the arbitrators exceeded their powers. In considering Wachovia's interpretation, we must determine what standard applies. How clear must it be that the arbitrators did rely on a claim not raised in the hearing? The parties don't clearly answer this question in their briefs. However, Barnes, relying on an unreported Missouri federal district court opinion, does argue that a Court may vacate an award only where the arbitrators "clearly and manifestly" decided an issue not before them. (Resp. at 3, quoting *Chesney v. Dunhill Investments, Ltd.*, 1989 U.S. Dist.

---

[4]We are citing to these facts merely to provide context to help figure out what the arbitrators did in this particular case and are not expressing any general opinion on whether "explained" or "unexplained" awards are better as a policy matter. As the two articles cited above note, this question is a matter of great debate, and there are benefits and burdens to each approach.

LEXIS 539, *6- 7 (W.D. Mo. 1989)).) In its reply brief, Wachovia suggests that Barnes has the burden of proof, although Wachovia at the same time argues that it is "clear" (Reply at 3) that the arbitrators did exceed their powers. For the reasons explained below, we find that, under the particular facts of this case, Wachovia must come forward with evidence showing that it is at least more likely than not that the arbitrators exceeded their powers.

As an initial matter, this standard is consistent with the fact that review of arbitration awards under the FAA is in general "tightly limited" and "perhaps it ought not be called 'review' at all." *Baravati v. Josephthal, Lyon & Ross*, 28 F.3d 704, 706 (7th Cir. 1994); *Eljer*, 14 F.3d at 1253-54 (scope of review is "grudgingly narrow" and "[e]rrors in the arbitrator's interpretation of law or findings of fact do not merit reversal under this standard"). Courts have refused to vacate arbitration awards even when there was uncertainty about the basis for, or logic behind, the award. A good illustration is the Seventh Circuit's decision in *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645 (7th Cir. 2001). In the first part of that opinion, Judge Posner described the arbitration award as being "so incomprehensible that three years later the judges and the parties are still trying to figure it out." *Id.* at 648. The party challenging the award complained that it was "internally inconsistent," "incomplete," and based on claims that were "not arbitrable" because they involved insurance business. *Id.* at 649. Judge Posner noted that the arbitrators even may have "lacked the professional competence required to resolve the parties' dispute." *Id.* This award might appear to be a good candidate for being overturned. Yet, in the second part of the opinion, Judge Posner explained that, under the narrow standard of review, the district court properly confirmed the award. Judge Posner noted that "neither error

nor clear error nor even gross error is a ground for vacating an award" and indicated that a court is not required to "scour the record for signs of arbitral incompetence." *Id.* at 650.

Requiring Wachovia to show that the arbitrators exceeded their authority also makes sense under the particular facts of this case. It is undisputed that Barnes never raised a Form U-5 defamation claim, that the parties never referred to or argued a defamation claim during the hearing, and that the arbitrators never made any statement or comment that would even remotely suggest that they were ruling on a defamation claim. In light of this backdrop, it would be highly unusual for the arbitrators to have reached out and based their ruling entirely on this new claim.[5] In fact, Wachovia repeatedly emphasizes this point to support its argument that it was highly unfair. But this point also undermines the argument's premise. The more unfair it seems that the arbitrators would have simply decided an issue out of the blue, the more unlikely it also seems. The simpler explanation, then, is to conclude that the arbitrators did not do what Wachovia claims they did.

Now we can consider Wachovia's specific argument in more detail. It is based solely on the second sentence, as Wachovia has no other evidence. Based on this one sentence, Wachovia attempts to derive two implied conclusions. The first is that the arbitrators believed that the Form U-5 was defamatory. This conclusion is actually the less controversial of the two. The

---

[5]This fact makes this case different from cases such as *Geneva Securities, Inc. v. Johnson*, 138 F.3d 688 (7th Cir. 1998), a case that the parties discussed in their briefs and at oral argument. The claimants there asserted numerous claims, one of which the Seventh Circuit concluded was clearly time-barred under the NASD's six-year rule and thus not eligible for arbitration. In the award, the NASD arbitrators specifically listed this claim as one of the claims under consideration, but did not state whether the $80,000 award was based on that claim. Given that the claimants had *submitted this indisputably ineligible claim* and that the arbitration award *specifically referred to this claim*, the Seventh Circuit held that the arbitrators may have exceeded their powers. *Id.* at 692.

second one is that the arbitrators rejected the claim that Barnes had been wrongfully terminated. Wachovia's argument is premised on proving both of these conclusions.

Beginning with the first proffered conclusion, what is the evidence that the arbitrators concluded that the Form U-5 was defamatory? If we consider the question in terms of defamation in the strict legal sense with its accompanying privileges, which is how Wachovia frames the question, then there is little evidence to suggest that the arbitrators made such a finding. Certainly, it is not one found in the literal words of the second sentence, which never states that the Form U-5 was defamatory, a point confirmed by the fact that the sentence does not even contain the word "defamatory" or any of its cognates. One could reasonably interpret the sentence as indicating that the arbitrators believed that the Form U-5 was "inappropriate," but this conclusion does not necessarily mean that it was "defamatory" in the legal sense.

Moreover, the Form U-5 is not even the central focus of the sentence. The arbitrators did not state directly that the Form U-5 itself was inappropriate, though that conclusion inevitably follows from what they said, but instead stated that "the reason" was inappropriate, more specifically "the reason *identified on* Mr. Barnes' Form U-5" was inappropriate. The "reason" is the focus of the sentence. The reference to the Form U-5 could then be seen as being merely descriptive, simply indicating the place where the reason was first set forth in writing. This interpretation is consistent with the way in which Barnes first referred to the Form U-5 in his Statement of Claim:

> The next day [after being told at the Holiday Inn that he was being fired], Mr. Barnes called Mr. Sandor and was told he was fired because he failed to follow firm policy regarding opening of new accounts. This stated reason was *repeated* on Mr. Barnes' Form U-5 . . . .

(Cl. at 4; emphasis added.) In other words, the arbitrators could have just as easily written the second sentence to say that the "reason *identified by Mr. Sandor orally* was inappropriate" with no change in substantive meaning, especially since it is undisputed that the reason given orally and the reason on the Form U-5 were the same. And the arbitrators may have believed that they were being more fair to Wachovia by relying on the written reason rather than the one given orally.

Other indicators that would typically accompany a finding of legal defamation are absent here. As Wachovia itself points out, the arbitrators made no finding of malice or recklessness and they did not order that the U-5 record be expunged or modified. (Mem. at 14.)

While we find that there is little evidence to support Wachovia's theory that the arbitrators concluded that the Form U-5 was legally defamatory, we can at least see the logic to the argument. The arbitrators clearly held that the reason set forth on the Form U-5 was inappropriate. It would not be that great of a leap to then conclude that the Form itself was defamatory. But this conclusion is not the difficult part of Wachovia's argument and does not by itself offer a basis for vacating the award.

The reason is that the arbitrators easily could have concluded *both* that the Form U-5 was defamatory *and* that Barnes should win on his wrongful termination claim. Under this interpretation, the two claims were alternative grounds for upholding the award and any defense that Wachovia might have had to the defamation claim, such as the assertion of a qualified privilege, would not change the ultimate result because it would not be a defense to the wrongful termination claim. This leads us to Wachovia's second proffered conclusion. For Wachovia to prevail on its petition, it must show that the arbitrators rejected the wrongful termination claim.

-10-

But there is no evidence whatsoever to support this conclusion. Such a finding would be directly inconsistent with the explicit finding of the second sentence which, as noted above, focuses on the reason set forth on the Form U-5 and states that this reason was "inappropriate" and does not "correctly" reflect the "actual reason," phrases consistent with a finding of pretext. Given that Wachovia relied on the *very same reason* set forth in the U-5 when it defended itself against the wrongful termination claim, then both claims must stand or fall together. It would be logically inconsistent for the arbitrators to have found (i) that the reason given on the Form U-5 was inappropriate and incorrect and at the same time to have found (ii) that the reason for firing Barnes was appropriate and correct. The only argument Wachovia makes to support the second proffered conclusion is that arbitrators never made a specific finding that they were ruling in favor of Barnes on the wrongful termination claim. However, this fact is not surprising given the context. Unlike the defamation claim, the wrongful termination was the entire focus of the hearing. It would be entirely reasonable to assume that any finding related to that claim.[6]

There is a final reason why Wachovia's argument fails. Wachovia has continually insisted that the reason the award was so unfair is that the "issue of the accurateness or appropriateness of the Form U-5 was never submitted to the Arbitrators in any of the pleadings or argument or evidence proffered during the Arbitration Proceeding." (Pet ¶ 60.)[7] In its reply

---

[6]One interesting aspect of Wachovia's argument is that it has never suggested, either in its petition or in its two briefs, that we should remand this matter to the arbitrators, even though that would the logical remedy if there was some uncertainty in the award and was the approach adopted by the Seventh Circuit in the *Geneva Securities* case. *See* 138 F.3d at 692 ("The district court shall instruct the arbitration panel to clarify its jurisdiction over the prior arbitration and, *if necessary*, to modify its award in accordance with this opinion.") (emphasis added).

[7]*See also* Mem. at 9 ("The factual issue of the accuracy of the Form U-5 and the legal determination of its 'appropriateness' was never before the Panel in any of the Pleadings

brief, Wachovia even suggested an easy way to prove the point. It invited this Court to "compare the articulated reasoning for the Award to the issues raised by the Parties in their pleadings and oral argument." (Reply at 1.) We have done so, but the comparison does not prove the intended point and in fact raises a question as to how Wachovia could in good faith make the assertion quoted in the top of this paragraph. Is it really true that the issue of the appropriateness of the Form U-5 was never argued by the parties during the proceeding?

In its opening statement to the arbitrators, Wachovia summarized what it intended to prove in the hearing:

> It will be clear that Mr. Barnes' termination was appropriate, is appropriate now, it probably would have been appropriate in February 2003. *The designation of Mr. Barnes' U-5 is absolutely appropriate.*

(Tr. 25; emphasis added.) In the culmination of its closing argument, Wachovia used similar language and again specifically referred to the appropriateness of the Form U-5:

> Mr. Barnes was appropriately terminated. *His U-5 [] appropriately disclosed the reasons for his termination.* And we ask you that you dismiss Mr. Barnes' case. Thank you.

(Tr. 542-43; emphasis added.) For purposes of comparison, we again set forth the second sentence, which of course represents the arbitrators' "articulated reasoning":

> In making this determination, the Arbitration Panel finds that the reason identified on Mr. Barnes' Form U-5 is inappropriate and does not correctly reflect the actual reason for termination.

With the exception of using the word "appropriate" instead of the word "inappropriate," the arbitrators used the same general language Wachovia used in its opening and closing

---

submitted to them, or in argument or evidence proffered during the course of the NASD arbitration."); Reply at 5 (asserting that the issue of the "inappropriateness of the U-5 language" was a claim "not submitted to the [arbitration] panel").

statements. It is thus unfair to accuse them of deciding an issue never argued in the hearing. To summarize, Wachovia's entire argument boils down to a straw man argument – it interprets the arbitration award to say something it does not really say and then accuses the arbitrators of being unfair for saying it.

## **CONCLUSION**

For the reasons set forth above, Wachovia Securities, LLC's petition to vacate the arbitration award is denied. Also pending before the Court is Barnes' Motion For Confirmation of Arbitration Award in which he requests that we enter judgment in the amount of the arbitration award plus interest at a specified rate. This motion has never been briefed. If the parties can agree on a proposed final judgment order, they should submit it to chambers within one week of the date of this order. If not, then Wachovia should file a response brief, no longer than six pages, within three weeks of the date of this order. Barnes may then file a reply, no longer than five pages, within two weeks of the filing of the response brief, and the Court will rule by mail.

**ENTER:**

---
**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** May 16, 2006